## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Crim No. 3:20CR242(JAM)** |
| | : | |
| **RANDALL TILTON** | : | **June 10, 2021** |

### SENTENCING MEMORANDUM OF THE UNITED STATES

*"If I am to be completely honest with you as well as myself, I would have to say I truly enjoyed everything I did with [MV1] and the rest of the girls."* Randall Tilton, PSR at ¶ 33(i).

Randall Tilton is a child predator, a dangerous pedophile, a serial rapist, and the producer of over one hundred images and videos of child pornography. He inflicted unspeakable cruelty and sexual abuse on *seven* children – primarily infants and toddlers. Over eight years, Tilton committed violent and sadistic acts on his victims – at times, he recorded the abuse and shared those videos and images with others, including on the dark web where they will likely remain forever. Tilton's own words, captured in comments he made in forums on the dark web and chilling letters sent from prison, demonstrate that he reveled in the abuse and brutality he inflicted. He deserves no leniency or sympathy from this Court. His conduct warrants nothing less than a guideline sentence of 210 years to ensure he spends the remainder of his life incarcerated.

**Procedural Background**

On December 7, 2021, Randall Tilton waived indictment and pled guilty to seven counts of sexual exploitation of a minor in violation of 18 U.S.C. §2251(a). Each count relates to a different child who was sexually exploited and abused by Tilton.

Both the PSR and the parties' plea agreement calculate Tilton's total offense level to be 53. PSR ¶¶ 3, 143. This extraordinarily high level is a circumstance the Sentencing Guidelines Manual describes as "rare" and results in a default offense level of 43 and a recommendation of life imprisonment. U.S.S.G., Chap. 5, Part A, App. Note 2. However, as the statutory maximum sentence on each of the seven counts is 30 years, the resulting guideline range is 210 years (or 2,520 months). PSR at ¶198. U.S.S.G. § 5G1.2(d) provides that in such a circumstance, the sentences imposed on each count of conviction shall run consecutively "to the extent necessary to produce a combined sentence equal to the total punishment." *See e.g. United States v. Howells,* 676 F3d. App'x 55, 57 (2d Cir. 2017)(because no count of conviction carried a potential life sentence, the Guidelines sentence was properly calculated as 580 years – the total of the statutory maximum for each count of conviction);.

The parties agree on the guideline calculation and the resulting guideline range of 210 years. The only disagreement is whether a departure or variance is appropriate.

**Argument**

Under the horrifying circumstances of this case, a guideline sentence of 210 years is fair, just, warranted and not greater than necessary to comply with the purposes of sentence. Such a sentence is reasonably designed to achieve the total punishment, reflects the extraordinarily serious nature and circumstances of Tilton's crimes, the harm done to the victims, and each of

the relevant considerations required under 18 U.S.C. § 3553(a).  The record reveals no mitigating factors that suggest anything but a guideline sentence is appropriate.

In his sentencing memorandum and his letter to the court, the defendant avoids any discussion of his crimes, offers obligatory remorse, identifies no mitigating circumstances, but requests a departure of 180 years from the guideline range.  After a review of each of the sentencing factors, the Court should reject defendant's request and impose a guideline sentence.

### A.  The Nature and Circumstances of the Offense are Among the Most Horrific Seen in this District

It is difficult to overstate—or even to adequately state—the horrifying nature of Tilton's crimes.  Over a period of eight years, Tilton sexually assaulted *seven* children ranging from infants to eight years of age.  Children who were either too young to speak or too afraid to resist.
████████████████████████████████████████████████████████
████████████.  Almost any child who had the misfortune to be alone in his presence even for a few moments.

By recording the abuse, Tilton created a permanent record of his brutality.  Tilton exacerbated this harm by showing some of the images and videos to others, including at least one minor victim. other adults and the dark web.

In addition to the harm he personally and repeatedly inflicted, Tilton also perpetuated the trauma of other children by downloading and sharing some of the most violent and deeply disturbing images and videos of the sexual abuse of children available on the dark web.

### 1.    Tilton's Sexual Exploitation of MV1

*"I have spent endless nights crying and asking God "Why? Why my little girl? Why my family?" I unfortunately haven't found the answer yet your honor as there is none other than Randall is a dangerous person. He is a dangerous person that can use his*

3

*manipulative skills on anybody....I can't even imagine the stress that my family would feel if Randall EVER was let out of prison. He is a danger to society your honor."*
Parent, MV1



. By his own account, Tilton sexually abused MV1 at least 300 times over eight years.  PSR ¶ 33(i) ("This isn't me bragging, but instead a figurative representation of exactly how sexually attracted I am to [MV1] ███████ ████████████████████████████████████████).  As MV1 described it, ███ ███████████████████████ PSR at ¶ 10.

Tilton recorded some of the abuse he inflicted on MV1 and forensic experts were able to recover over a hundred unique videos or images on Tilton's devices.  PSR ¶ 37.  A representative sample of the videos and images are described in the PSR and will not be repeated here.[1]  PSR at ¶¶ 38, 39.  A review of the evidence demonstrates that Tilton inflicted increasingly violent sexual abuse on MV1 to include vaginal, anal and oral sexual assaults and bondage.  It only ended when Tilton was arrested.

Tilton abused MV1 without regret or remorse.  On the dark web, he bragged and reveled in the brutality he inflicted.  PSR at ¶ 27.  Perhaps even more surprising, Tilton continued to delight in the abuse months after his arrest.,  PSR at ¶ 33.

**Distribution to others.**  To compound the already unfathomable abuse, on at least two separate occasions, Tilton displayed the images of MV1 while he engaged in sexual activity with adults.  PSR at ¶ 11.

**Distribution on the Dark Web.** Tilton, using the screenname "██████████", uploaded

---

[1] If the Court wishes to view any of the evidence in this case, or sanitized copies of any of the images or videos, the Government is prepared to provide it to the Court in advance of the sentencing hearing.

a violent video depicting his anal rape of MV1 when she was seven years old.  PSR at ¶ 36.

Tilton titled the video, ███████████████████████  *Id.*  In his letter, Tilton describes

this video in gruesome detail, but omits that, prior to raping her, he gagged MV1 to stifle her

screams, tied MV1's wrists to her knees and then tied her ankles to a bed.  PSR at ¶ 33(f),(g).

MV1 is crying in the video.  *Id.*  This is his self-described, "most enjoyable and unforgettable sex

with [MV1]."  PSR at ¶ 33(f).

In another demonstration of his sadistic nature, Tilton expresses pride that this brutal

video was viewed over 100,000 times by forum users on the dark web.  PSR at ¶¶ 17, 33(g).  The

Government has no reason to doubt Tilton's representation regarding the number of views and

downloads.  At the  time the PSR was written, law enforcement reported the video to NCMEC

128 times.  PSR at ¶ 36.  As of the day of this sentencing memorandum, the number grew to

approximately 168.   That video depicts the worst days of MV1's life, as well as MV1's mother's

life, and they must now deal with the fact that it can forever be replayed by individuals who find

pleasure in watching the vicious rape of a child.  PSR at ¶ 29.

**Distribution to MV1.**  Tilton showed MV1 adult and child pornography to demonstrate

what he wanted her to do.  PSR at ¶ 11.  This included :

- Child pornography of Tilton sexually abusing MV2.
- Adult pornography of Tilton with another adult female
- Adult and child pornography Tilton collected from the internet and dark web.

Tilton forced MV1 into submission and silence.  *See* PSR at ¶¶ 10, 12  (Tilton warned

MV1 not to scream as he abused her, at times gagged her and later coerced her not to tell anyone

because it was their secret and he would go to jail); *see also id* at ¶ 9 (When Minor Victim 1 told

Mr. Tilton to stop, he did not. She would try to "trick" Mr. Tilton by telling him there were

"invisible cameras" in the room ████████████████ to get him to stop."); id at  ¶ 14 ("She

was saying stop I told her to quiet down because I didn't want anyone (to hear) from the surrounding walls."). Despite the fear he instilled, MV1 stepped forward to report his crime, undoubtedly protecting others, including MV2.

### 2. Tilton's Sexual Exploitation of MV2

*"Randall is the type of offender that needs to stay in prison for life. There is no rehabilitation for him and there is no place for him in society. He has proven to be a master manipulator (he got away with his crimes for a very long time), he has shown the ability to escalate with his aggression… he has no remorse for his actions. He is a psychopath at worst and a narcissist at best. Neither have the ability to feel remorse or compassion. He will say whatever needs to be said."* Parent, MV2

While it is hard to imagine what would lead a person to sexually abuse any child, it is inconceivable that a person could be so inherently evil as to prey upon infants. Randall Tilton, however, is the personification of that very evil. As noted above, his abuse of MV1 began when she was only 6 months' old. With MV2, it began when she was four months' old.

As with MV1, Tilton recorded some of the abuse. A description of the video and images is described in the PSR. PSR at ¶¶ 41, 42. As noted above, MV1 describes seeing a video of Tilton "licking" MV2's private parts and "jumping" on MV2 (that is, rubbing or attempting to insert his penis into MV2). PSR at ¶ 11. During her forensic interview, MV1 ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Tilton also shared his sexually explicit videos and images of MV2 with an adult female. PSR at ¶ 25.

Tilton's posts on a dark web forum chillingly describes the torture he planned for MV1 and MV2.





As for my plan, i will start small and slowly work the head in after i pop her cherry. It will be very painful for her but pleasurable for me and with her that young she won't remember a thing. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓                  *Id.*

Anyone in the north-east coast of the US? PM [private message] me if you're in that area. I like girls, the younger the better. Wanting to share into your fantasies. ▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

If there is any grace to be found in this case, it is that MV2 was rescued from this fate.

But, even at her young age, there will be long-standing impact from the harm Tilton inflicted on

her. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

### 3.  Tilton's Sexual Exploitation of MV3

*This is the hardest letter we have ever had to write.  Randall was accepted into our loving home as a friend and brother. Someone we allowed ourselves to trust, and build not only a working relationship, but a personal one as well. The events that took place have made trusting people more difficult and has no place in this world.*  Parent, MV3

Tilton's abuse of MV3 exemplifies his predatory and opportunistic nature.  MV3 is the

daughter of Tilton's former co-worker on the U.S.S. South Dakota.  When MV3 was 4 years old,

her family invited Tilton and other members of the crew to their home for a barbeque.

By his own admission, Tilton used this barbeque to "lure" MV3 into the family's garage,

remove her pants and underwear, and took lascivious images of her vagina while she was laying

---

[2] In her forensic interview, MV1 confirms that Tilton used this method.  "Minor Victim 1 did not like when Mr. Tilton had sex with her because she was too young. Mr. Tilton would tell Minor Victim 1, "No, you're a big girl." PSR at ¶ 9.

on the floor.  PSR at ¶44.   The forensic review of Tilton's devices recovered several sexually explicit images of MV3 which are described in the PSR.  PSR at ¶¶ 44, 45.   In addition, Tilton showed the images of MV3 to an adult female.  PSR at ¶ 26.

This offense is another example of Tilton's dangerousness.  Even when surrounded by his colleagues,  members of the Navy and their families, Tilton was not frightened or deterred.  He seized a momentary opportunity to exploit and abuse a child despite the imminent risk of being caught.

### 4.  Tilton's Sexual Exploitation of MV4

*Please Your Honor, do not go easy on Randal. This may be his first offense, but he is a dangerous monster with no capability of remorse. I fear if he is ever permitted out he will hurt more children, and possibly even escalate.* Parent, MV4

In 2016, Tilton met MV4's mother on an online dating application.  They dated for a short period of time and then went their separate ways when Tilton got orders to return to Connecticut.  PSR at ¶70, page 29.

A forensic review of Mr. Tilton's devices revealed 1 video and 4 images depicting Tilton's rape and sexual abuse of MV4, when she was four years old.  The images and video are described in the PSR at ¶¶ 47, 48.

In 2020, federal agents notified MV4's mother about the images.  Understandably, MV4's mother was shocked.  As she struggled to determine how Tilton managed to gain access to her daughter, she recalled that, at the time, she was a single mother working two jobs.  On a few occasions, she brought MV4 to Tilton's apartment to eat pizza and watch a movie together.  On occasion, she fell asleep during the movie.  She believes that Tilton took advantage of these briefest of opportunities to record himself abusing MV4.

Eerily, even after Tilton moved back to Connecticut – and after he had raped and abused her daughter, he continued to stay connected on social media to MV4's mother. *Id.* There is a heightened level of maliciousness for Tilton to "like" and comment on social media pictures of MV4 and her mother, knowing that he had exploited her and maintained images documenting his abuse.

### 5. Tilton's Sexual Exploitation of MV5

In 2015, Tilton met MV5's mother on an online dating application. They dated for a short period of time and then went their separate ways. At the time, MV5 was three years old.

A forensic review of Mr. Tilton's devices revealed 1 video and 13 images documenting the sexual abuse of Minor Victim 5.  PSR at ¶¶ 51-53.   The images and video show Tilton digitally penetrating MV5's vagina and anus. *Id*   The pain is clear as the images show bruising and redness. *Id.* at ¶ 52 (1).

### 6. Tilton's Sexual Exploitation of MV6 and MV7

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████.

#### a.  MV6

*My daughter, being one of the victims in this case, has suffered unbelievable acts ....Professionals told us she "will" have trauma due to the severity of the heinous acts performed. Its more of a when, not an if. No child should have to experience this kind of cruelty, nor should they have to endure future emotional issues due to it.*  Parent, MV6

Tilton recorded himself raping MV6 when she was only three years old.  Tilton describes MV6 as his "biggest sexual relationship" next to MV1.   PSR at ¶ 55."I was very attracted to this

girl because she reminded me of [MV1]. We did everything sexual except anal sex and I recorded all of it." *Id.*

The images and videos Tilton recorded of MV6 are described in the PSR.  PSR at ¶ 56.

There can be no doubt about the pain he inflicted.  PSR at ¶ 57(1).

### b.  MV7

*I want you to know that from every angle I try to see this from I see the same thing. A never ending path of pain and hardships. A shadow forever lurking ready to block out any bit of light we try to find. I see a world of struggle surrounded by seas of uncertainty and darkness.*

*I want you to know that I believe that when you find a monster, and capture it, the goal should be to never let it ever resurface again. I want you to know that if you told the boogeyman that he could come out of the closet as soon as he learns how to behave that he would put every power he has to make you believe that he could behave just so he could come out of that closet one more time to scare. I want you to know that no tiger can change their stripes, they could only paint themselves to make you believe they are a zebra.*

  Parent, MV7

████████████████████████████████████████

████████████████████████.  Tilton coerced MV7 to perform oral sex

on him.  He recorded this abuse, including two videos and six images which were recovered

from his devices .  PSR at ¶¶ 58, 59.  A representative sample of the images are described in the

PSR at ¶ 59.    MV7 was three years old.


### 7.  Relevant Conduct—Defendant's Possession of Child Sex Abuse Material

With the horror of Tilton's charged offenses, it would be easy to overlook that Tilton

additionally victimized children whose images are traded on the Internet. At the time of his

arrest, Tilton possessed more than 8,000 images and video files –  including some of the most

violent child pornography the undersigned has had the misfortune to encounter, including

victims as young as 2 months and the sexual assault of a deceased child. PSR ¶ 24.

10

Approximately 1,212 of the images and videos depict child victims known to law enforcement. *Id.* They, and the children who have yet to be identified in the other images and videos he possessed, are also victims of Tilton's crimes.

This case is a stark reminder of the link between possession of child pornography and child sexual abuse which the Supreme Court saw when it stated that "[t]he distribution of photographs and films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children." *New York v. Ferber,* 458 U.S. 747, 759 (1982).

Several of the victims submitted Victim Impact Statements, which were filed under seal on the Docket. Docket No. 22. Their words are both heartbreaking and inspiring. They demonstrate resiliency in the face of life-long damage, and they ask for justice.

- There are and will be so many people out there taking pleasure in watching me suffer, in watching the most terrifying and humiliating moments of my life… It will never stop. I can't move on. I am helpless to do anything about it. There's a constant feeling of violation, distrust, and anxiety…I had finally come to understand that the pictures of my abuse were going to be out there forever. My past continuously haunts me and is much harder to leave in the past when I know others are still watching. My childhood was stolen from me, but because there is this record of my abuse, it continues and will forever affect my life in ways words cannot express. My images will probably always be circulating the internet, but this person is perpetuating this. This person chose to view the images of my abuse for their pleasure. By having done this they are allowing and encouraging more young victims to be groomed, they are normalizing the sexualization of children, and they are watching the abuse a non-consenting child had to suffer. Docket No. 22, Exh. A

- This defendant has damaged, demeaned and de-valued my child. He or she may tell the court they are sorry, but there is no actual accountability to my daughter for the ways that the defendant has harmed her. Docket No. 22, Exh. C

- I can find no words to express the fury I feel at those who participate in this evil or my scorn for any attempt to minimize the responsibility by feeble claims that the crimes were "victim-less". My daughter is a real person. She was horribly victimized to provide this source of "entertainment." She is exploited anew each and every time an image of her suffering is copied, traded or sold. While the crime is clearly conscienceless, it is hardly "victim less." Docket No. 22, Exh. G.

Reviewing those impact statements also serves as a reminder of the completely distinct harm Tilton caused by virtue of his possession of child pornography. The victim impact statements are a testament that these harms are not hypothetical hyperbole, but real world, devastating effects. Respectfully, the Court should consider the defendant's child pornography collection as an aggravating factor. PSR at ¶ 69

### 8. Consideration of the Pending State Court Proceedings.

Defendant's sentencing memorandum begins with a recitation of the pending state charges for sexual assault and noting that, according to the state defense attorney, the state prosecutor is likely to make an offer of 60 years to run concurrent to the federal sentence. The undersigned spoke with the state prosecutor and she represented that this is accurate but that it was based on the state's understanding that Tilton faced a sentence of more than two hundred years and would likely receive a federal sentence that would exceed his life. If the defendant receives a sentence of 30 years, as requested by the defendant, the state would not limit themselves to an offer of 60 years.

The Court should reject any suggestion that the state's offer indicates an appropriate resolution of the federal charges. Due to jurisdictional limitations, the state charges were limited to Tilton's abuse of MV1, MV2 and MV3. In fact, the state charges do not capture all of the abuse Tilton inflicted on MV1 because many of those assaults occurred in New Hampshire. The state charges do not include Tilton's sexual abuse of MV4, MV5, MV6 or MV7 because they occurred in California or New Hampshire.

### B. The History and Characteristics of the Defendant

Tilton is a dangerous child predator who will take any opportunity to satisfy his own needs without regard – whatsoever—to the pain he inflicts. Exh A at 18 (Tilton describes his

dark side as "an infectious and hungry manipulator who's[sic] cold and animalistic behavior is for achieving one selfish goal:  to endulge[sic] in the gratification obtained by extracting as much personal pleasure from using little girls as nothing more than sexual objects.").

As set forth in the PSR and the defendant's memorandum, he had a "relatively 'normal' childhood."  Def. Sentencing Mem. at 3.   Unlike so many defendants who come before this Court, Tilton had the support of family, friends, and a career.  ███████████████████ ████████████████████████████████

During his interview with detectives, Tilton acknowledged that 'there are varying degrees of this stuff [child pornography] and I'm not on the lighter side or on the heavier side, I'm somewhere in the middle."  PSR at ¶ 15.  This either reflects Tilton's honest belief that he could have abused the children more severely (beyond raping infants, preying on toddlers and performing sodomy and bondage) or is an attempt to minimize his conduct.  In either case, it is profoundly disturbing.

Tilton – through his actions and his words -- has shown exactly who he is.  His history and characteristics do not mitigate his conduct in any way.

1. **The Court should reject the defendant's request for a downward variance for his military service**.

Sentencing Guideline § 5H1.11 recognizes that "[m]ilitary service may be relevant in determining whether a departure is warranted, if the military service, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from typical cases covered by the guidelines."  Under the circumstances of this case, the defendant's attempt to use his military service to seek a lower sentence is disgraceful and should be denied.

First, Tilton has not established that his military service was "present to an unusual degree". There is no evidence before this Court showing acts of bravery or otherwise courageous service. Frankly, the record demonstrates that MV1 showed more courage and bravery by speaking out about the abuse than Tilton ever did.

Tilton claims he had "numerous awards and medals" but he fails to provide details about a single one. PSR at ¶ 191. Upon information and belief, Tilton will be dishonorably discharged after he is sentenced for his crimes in federal court. This is hardly the record on which the Court should entertain a downward departure especially when viewed with the seriousness, severity, and brutality of Tilton's crimes.

Second, Tilton committed *every one* of the offenses while serving in the military. In fact, one of Tilton's victims, MV3, is the daughter of another service member. Tilton preyed on MV3 while at a barbecue hosted for the crew.

The government has not found a single case in which a court granted a departure for military service for a defendant convicted of producing child pornography while serving in the military. This is not surprising. The military values duty, honor, and country. Key among these, however, is honor. That is why military discharges are characterized by the type of service – honorable vs. dishonorable. There is nothing honorable about sexually exploiting infants and children. There is nothing honorable about raping and sodomizing the most vulnerable among us. This defendant is without honor and should be ashamed and embarrassed to try to use military service as a mitigating factor. He dishonors every man and woman who has ever worn the uniform or carried their countries flag into battle.

**C.   The Need for the Sentence Imposed—to Reflect the Seriousness of the Offense, and to Provide Just Punishment for the Offense.**

A guideline sentence will adequately reflect the seriousness of the offense and provide just punishment.  *See* 18 U.S.C. § 3553(a)(2)(A).  Tilton should be imprisoned for the rest of his life in part because he imposed a life sentence on his victims and the victims' families.  A review of the victim impact statements submitted in this case makes that crystal clear.  PSR at ¶ 70.  In addition, clinical research supports the conclusion that victims carry the burdens of their abuse into their adulthood.

- Women who suffered child sexual abuse in the form of intercourse, including oral or vaginal intercourse, are <u>260</u> percent more likely to  attempt suicide than women who experienced no childhood sexual abuse.  *See* Shanta R. Dube, et al, *Long-Term Consequences of Childhood Sexual Abuse by Gender of Victim*, 28 AMERICAN JOURNAL OF PREVENTIVE MEDICINE 432, 435 (2005).

- Women who were subjected to child sexual abuse in the form of intercourse are <u>90</u> percent more likely to use illicit street drugs and <u>90</u> percent more likely to experience problems with alcohol.  *Id.* at 435 (Table 4).

- other negative consequences included an increased risk of premature death, adolescent pregnancy, and fetal death in a first pregnancy.  *See* David W. Brown, et al, *Adverse Childhood Experiences and the Risk of Premature Mortality*, 37 AMERICAN JOURNAL OF PREVENTIVE MEDICINE 389-96 (2009); Susan D. Hillis, et al, *The Association Between Adverse Childhood Experiences and Adolescent Pregnancy, Long-Term Psychosocial Consequences, and Fetal Death*, 113 PEDIATRICS 320-27 (2004).

- Child sexual abuse in the very young (under four years of age) "was associated with sexual and non-sexual behavior problems and attachment insecurity" for the children and "PTSD symptoms and emotional reactions" for the parents. *See* https://pubmed.ncbi.nlm.nih.gov/30206471/ (last visited June 10, 2021).

**D.  The Need for the Sentence Imposed -- to Protect the Public from Further Crimes of the Defendant**

Imposing the maximum sentence on Tilton is the only sure way to protect the public from his future crimes.  18 U.S.C. § 3553(a)(2)(C).  Tilton's unspeakably horrific crimes alone

provide sufficient justification for a guideline sentence to protect the public; but his letters and posts on the dark web reveal that he lacks a conscience, or any moral compass, and poses a real and certain danger to children.

In his sentencing memorandum, Tilton claims he is remorseful. The Court should be wary of this apology offered on the eve of sentencing. In July 2020 – eight months after he was arrested – Tilton sent a 24-page letter to a person he considers to be his grandfather. In the letter, Tilton detailed his abuse of each of the victims in this case as well as his long history of child exploitation. A redacted version of the letter is attached as a sealed exhibit to this memorandum. Exh. A. This letter is notable because it contains Tilton's graphic descriptions of the abuse he inflicted, his explicit delight at his rape and torture of children and his lack of any empathy or concern for his victims. The letter is difficult to read, but it is important because it provides the Court with a unique opportunity to see the defendant unfiltered. The person he is when no one is watching, *other than a defenseless child.*

The definition of pedophilia is a sexual attraction to prepubescent children that lasts more than six months and affects one's behavior. *See* Ryan C. W. Hall, Md, and Richard C. W. Hall, Mdm *A Profile of Pedophilia: Definition Characteristics of Offenders, Recidivism, Treatment Outcomes, and Forensic Issues,* PA, Mayo Clin. Proc. (April 2007). Tilton does not dispute that he is a pedophile. *See e.g.* Exh. A at 1. The facts of this case confirm that to be true -- he abused the seven minor victims over a period of eight years – and, with MV1, that abuse occurred *hundreds* of times. In addition, Tilton's collection of child pornography included videos much like those Defendant himself produced – men raping prepubescent minor children and other sadistic acts. PSR at ¶ 24

16

Tilton admits that he knew his crimes were wrong.  He chose victims who either could not speak or who he frightened into silence.  His crimes only stopped because the Town of Groton police department arrested him after a brave former girlfriend came forward and an even braver MV1 shared the secret she had been carrying for him.  PSR at ¶¶ 6-7.

### 1.  Defendant's Argument that Society Will Not Need to be Protected from Him After a 30-year Sentence Should be Rejected

Defendant asserts that a sentence of 30 years is appropriate despite his horrific crimes because it would make him eligible for release in his 50s.  According to Defendant, "A thirty-year sentence will incapacitate him and keep him in prison until he is in his late 50s or early 60s. His age at that point places him at the lower end of the recidivism risk spectrum." Def. Sentencing Mem. at 9.

As an initial matter, there is no evidence or information before this Court– in the form of a psychiatric evaluation or otherwise --  on which the Court could find that Randall Tilton will be a low risk of recidivism.  Absent such evidence, the defendant relies on general statistics about age and recidivism rates.

There is reason to doubt the proposition that the rates of recidivism for child pornography offenders decrease with age.  First, a review of the data for federal sentencings in child pornography offenses (which includes production, receipt, distribution, and possession), collected in the table below, belies the notion that Tilton with "age out" of this type of offense. *See* Exh B (data from the Sentencing Commission https://www.ussc.gov/research/sourcebook-2020).

| Age | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 |
|---|---|---|---|---|---|---|
| 51 and over | 24.4 | 24.2 | 23.9 | 24.5 | 25.4 | 26.1 |
| 41- 50 | 22.2 | 21.8 | 20.9 | 22.4 | 20.6 | 22.2 |
| 31-40 | 25.2 | 29.4 | 29.4 | 29.5 | 32.3 | 30.6 |
| 21-30 | 25.9 | 23.5 | 24.9 | 22.5 | 20.6 | 19.9 |

Second, numerous studies have shown that the rate of reporting child exploitation crimes is very low, thus any recidivism rates based on records of arrest or conviction should be viewed as underestimates. *See e.g.* K. London, M. Bruck, S.J. Cedi and D.W. Schuman, *Disclosure of Child Sexual Abuse: What Does the Research Tell Us About the Ways that Children Tell?*, Journal of Psychology, Public Policy, and Law, Vol. 11, No. 1, p. 194 (2005) (reviewing numerous studies and concluding "[t]he evidence indicates that the majority of abused children do not reveal abuse during childhood."). The Sentencing Commission acknowledged this in its report on the child pornography guidelines, "[i]t is widely accepted among researchers that sex offenses against children often go unreported and undetected," a fraction that "always should be considered in assessing the results of a sex offender recidivism study based solely on reported arrests or convictions." U.S. Sentencing Commission, *Report to Congress: Federal Child Pornography Offenses* (Dec. 2012), at 295.

Third, Tilton is an admitted pedophile who abused multiple children over eight years, has had a sexual interest in children ever since he was a teenager and possessed thousands of images of child pornography. As Judge Posner explained: "Statistical analysis of sex crimes has shown that *the best predictor of recidivism is not deportment at an interview but sexual interest in children*. R. Karl Hanson, Kelley E. Morton & Andrew J.R. Harris, "Sexual Offender Recidivism Risk: What We Know and What We Need to Know," 989 Annals of the N.Y. Academy of

18

Sciences 154, 157 (2003). *United States v. Garthus*, 652 F.3d 715, 720 (7th Cir. 2011) (emphasis

added) (affirming a 30 year sentence for the possession, receipt and transportation of child

pornography noting "The sadistic nature of much of the child pornography consumed by the

defendant is another reason to worry about his being on the loose.").

Finally, even if a 60-year-old Tilton presents a lower future risk of sexually abusing

children than his current-day self does, in the words of the Eleventh Circuit: "[a] low risk is not

the same as no risk. Adequate protection is a function of two variables: the level of risk that

conduct will occur and the level of harm that will be inflicted if that conduct does occur." *United*

*States v. Irey*, 612 F.3d 1160, 1217 (11th Cir. 2010) (en banc) (citing *United States v. Boyd*, 475

F.3d 875, 877-78 (7th Cir. 2007) (upholding a sentencing determination that the defendant's acts

created a substantial risk of bodily injury to another person in part because "[d]angerousness is a

function of the magnitude of the harm that will occur if danger materializes and the probability

that it will materialize").

Tilton poses a danger to children if he is ever are allowed out of prison.  That is

especially true here, given Tilton's history of predatory behavior and his preference for victims

who are too young to speak or even know that his conduct is immoral and illegal.  The Court

should impose the maximum sentence to protect the public.

### E.  The Need for the Sentence imposed -- to Afford Adequate Deterrence to Criminal Conduct and to Promote Respect for the Law

Defendant argues that there is no reason to believe that a sentence above 30 years will be

more effective at deterring future crimes and a variance is necessary to reflect "incremental

punishment."   Def.'s Sentencing Mem. at 7.

It remains to be seen whether the imposition of a prison sentence can act as a deterrent to

others predisposed to, or pondering whether to, commit such crimes. However, to the extent that

it can, the magnitude of these crimes requires the statutory maximum sentence as a potential deterrent. In fact, general deterrence is an important factor because, as discussed above, sex crimes against children are significantly under-detected.  It is thus vitally important to deter those who might commit such crimes by imposing significant sentences on those perpetrators who are successfully identified and brought to justice.  *See e.g. United States v. Nania,* 724 F.3d 824, 842 (7th Cir. 2013) ("The senseless acts of these criminals damage children for the rest of their lives The government has understandably devoted considerable resources to deterrence—and that distinct objective warrants our attention.  In that light, we find a 330-month consecutive [to a 103-year state sentence] sentence reasonable punishment.")

Imposing the maximum sentence on Tilton would send a strong and unambiguous message to deter other would-be offenders.

### 1. Defendant's Argument that the Parsimony Clause Requires a Non-Guideline Sentences Should be Rejected.

Defendant argues that a life sentence for a first-time offender fails to address incremental punishment and supports a non-guideline sentence. Def.'s Sentencing Mem. at 6-7.   Defendant is a criminal history category I .  PSR at ¶ 148.  While this designation "does not adequately reflect the seriousness of the defendant's past conduct or the likelihood of recidivism," because the Guidelines call for a life sentence in any event, the Government is not seeking an upward departure for this criminal history category.  U.S.S.G. § 4A1.3(a).  That said, the fact that he has no prior convictions speaks primarily to his *choice of victims*. He chose to sexually abuse victims infants and toddlers, children who could not explain what he was doing, appreciate it's wrongfulness or exert any control over him.  He evaded any criminal convictions for *years* – as he preyed on seven children.  Tilton should not be rewarded for avoiding detection as he accumulated victims and silenced MV1 while he repeatedly abused her.

Moreover, there is ample Second Circuit precedent for a guideline sentence that exceeds a person's natural life for the worst child sexual predators. *See* Exh. C (listing seven cases in which the Second Circuit affirmed sentences in excess of 100 years). In two cases, the Court directly rejected challenges to the procedural and substantive reasonableness.

> Hamilton next maintains that a cumulative sentence of 1,800 months is substantively unreasonable because given his age and life expectancy, the sentence amounts to "multiple life sentences." But of course, no prisoner can serve more than a life sentence. Any sentence that extends beyond Hamilton's maximum conceivable life expectancy has no practical effect on him. Thus, the sentence imposed on Hamilton (like any sentence a third its length) is simply equivalent to a life sentence. Insofar as Hamilton argues that such lengthy sentences should be "reserved [for] intentional murder," we find such an argument unavailing. Nor are we persuaded that a life sentence in the case at bar overstates the "seriousness of the offense," see 18 U.S.C. § 3553(a)(2)(A), given Hamilton's role in producing graphic child pornography by filming himself sexually abusing children as young as four years old.

*United States v. Hamilton* 548 Fed. Appx 728, 731 (2d Cir. Dec. 23, 2013) (summary order) (affirming a sentence of 150 years). *See also United States v. Howells,* 676 Fed. Appx. 55, 57-58 (2d Cir. 2017) (summary order) (rejecting defendant's "life expectancy" argument and finding that the court did not err in stacking maximum sentences on all offenses of conviction to arrive at total punishment of 580 years). The defendants in both of these cases, *Hamilton* and *Howells*, pled guilty to the charged offenses and were criminal history category I, just like Tilton.

### F.    The Need to Avoid Unwarranted Sentence Disparities

The Sentencing Guidelines were promulgated, in part, to minimize disparities in federal sentences. Although those Guidelines are no longer mandatory, the importance of eliminating sentencing disparities remains. 18 U.S.C. § 3553(a)(7).

Production of child pornography is among the vilest and most destructive offenses in the United States Code, and offenders around the country routinely receive severe sentences after

being convicted of it, including life sentences, effective life sentences and sentences exceeding a natural life expectancy.

In addition to the Second Circuit cases noted in the preceding section and attached as Exhibit C, other courts around the country have likewise imposed sentences of 100 years or more against significant child pornography offenders.   As an illustration of such sentences, the United States has attached a non-exhaustive list of the sentences.  *See* Ex. D.   A review of the list confirms that Tilton's guideline range is appropriate – he had more victims than all but one of the cases on the list; he had younger victims than most of the cases ███████████████████████

██████████████████████████████████████ *Id.*

Not only do district courts hand down similar sentences for similarly serious cases, but appellate courts across the country also routinely uphold such sentences as substantively reasonable.  *See, e.g., United States v. Betcher*, 534 F.3d 820 (8th Cir. 2008) (upholding as reasonable a 750-year sentence for a first-time offender who took pornographic pictures of five 8- to 11-year-old girls, █████████████████████).

A guideline sentence here would be in line with other cases in this district, and around the country, dealing with prolific sex offenders like Tilton.  But, to be sure, very few offenders compare to Tilton.  Tilton has victimized more children than most other defendants, had a relationship closer to his victims than many other offenders, had victims younger than most and, until recently, expressed only delight – not remorse -- for his conduct.  Tilton's conduct is at the very upper bound of child sex predators that come before federal judges; his sentence should reflect that truth.

**G. To provide the Defendant with Treatment in the Most Effective Manner**

In his sentencing memorandum, the defendant requests sex offender treatment to facilitate his rehabilitation. Def. Sentencing Mem. at 4. The Government agrees that such treatment is appropriate. However, the opportunity to attend the sex offender treatment program should not serve as a basis for the defendant receiving a reduced sentence in this case. First, there is no information – in the form of a psychiatric evaluation or otherwise -- on which the Court could find that the defendant will respond to the sex offender treatment. In fact, the Government submits that Tilton's life-long sexual interest in children, his commission of the extreme abuse and his admitted "ecstasy" in inflicting such abuse indicates rehabilitation is improbable.

██████████████████████████████████████████████████████████

████████████████████." Importantly, Tilton stated he specifically did not disclose to his therapist that he sexually abused children. He explained that he chose not to disclose this information because he knew his therapist was a mandated reporter. PSR at ¶ 14. In other words, he made a choice not to seek sex offender treatment because he wanted to protect himself – *not his victims.*

**H. The Need to Provide Restitution to Any Victims of the Offense**

MV1, along with at least one victim of the relevant conduct, have restitution requests. The restitution requests have been shared with the defendant and an effort is underway to determine whether an agreement can be reached. If that effort is not successful, the Government will request a hearing to be held within 90 days of the sentencing. 18 U.S.C. § 3664(d)(5).

I. **Consideration of the Kinds of Sentences Available and any Pertinent Policy Statements**

Consideration of the remaining § 3553(a) factors also support a guideline sentence:

**a.** The only kind of sentence available is incarceration, and the sentencing range as established by the Guidelines is 210 years.

**b.** The policy statement issued by the Sentencing Commission at U.S.S.G. § 5K2.0(b) advises against a departure from the Guidelines in child crimes and sexual offenses except in explicitly numerated circumstances, none of which are present here.

Simply put, all of the § 3553(a) factors lead to one conclusion: the sentence imposed must ensure that Randall Tilton will spend the remainder of his life in prison, never again to have access to another child.

## CONCLUSION

Randall Tilton proved, time and again, that he is a dangerous predator with an insatiable appetite for abusing and exploiting children. His crimes include infants and toddlers, the most defenseless of an already vulnerable set of victims. The type of person who could conceive of, commit and record, these acts must be separated from the rest of society.  He simply cannot be allowed to ever be at liberty again, as any potential release would be to gamble with the lives and well-being of children. That is too high a price.

The record reveals no mitigating factor at all, much less one that would support a deviation from the recommended Guideline sentence. In fact, this case involves only aggravating factors that support the imposition of a life sentence. Such a sentence is reasonably designed to achieve the total punishment, and takes into account the nature and seriousness of the defendant's crimes, the harm done to the many child victims whose exploitation came directly at

24

his hands, as well as the child victims whose images he collected from the Internet - and each of

the relevant considerations required under 18 U.S.C. § 3553(a). As such, the Government

maintains that consecutive thirty-year sentences totaling the maximum available sentence of 210

years, designed to ensure that the defendant spends the rest of his life in prison, is the outcome

warranted by his crimes. Such a sentence is *not* greater than necessary, and both complies with

and accomplishes the many goals of sentencing. 18 U.S.C. § 3553(a).


          Respectfully submitted,

          LEONARD C BOYLE
          UNITED STATES ATTORNEY

          */s/ Nancy V. Gifford*

          Nancy V. Gifford
          Assistant U.S. Attorney
          450 Main Street, Suite 328
          Hartford, CT 06103
          Bar No.  ct16324
          Email.  Nancy.gifford@usdoj.gov
          Phone No. 860-947-1101

          */s/ Amanda Oakes*

          Amanda S. Oakes
          Assistant U.S. Attorney
          157 Church Street
          New Haven, CT  06510
          Bar no.: ct30310
          Email: Amanda.oakes@udoj.gov
          Phone: 203-821-3700

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 10, 2021, a copy of the foregoing Sealed Brief and Exhibits were filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

_/s/ Nancy V. Gifford_
Nancy V. Gifford
Assistant U.S. Attorney